UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-23722

SARAH LOREDO,

      Plaintiff,

v.

CARNIVAL CORPORATION & PLC,

      Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, SARAH LOREDO (hereinafter "LOREDO"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION & PLC, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1.    LOREDO seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

5.    LOREDO is *sui juris* and is a resident and citizen of the state of Mississippi.

6.     CARNIVAL is a citizen of the state of Florida and the nations of Panama and the United Kingdom.

7.     CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.     CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

      a.     Operated, conducted, engaged in, or carried on a business venture; and/or

      b.     Had an office or agency; and/or

      c.     Engaged in substantial activity; and/or

      d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the subject stairs, and the surrounding area involved in LOREDO's incident, and all material and effects pertaining thereto, including any material that was applied or that should have been applied, and/or other parts thereof, the area and stairs' design and/or visual condition, nosings, handrails, and/or any other applied, adhesive, and/or other material.

11.     At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in LOREDO'S incident.

12.    LOREDO'S incident occurred on or about September 8, 2022, while she was a fare paying passenger on CARNIVAL'S vessel, the *Ecstasy*.

13.    At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Ecstasy*.

14.    On or about September 8, 2022, between approximately 10:00 a.m. and 12:00 p.m., due to a delay in the cabins being ready for the passengers, LOREDO was attempting to descend the staircase from deck 9 to deck 8, which were unreasonably crowded with approximately 20 or more passengers attempting to descend simultaneously.

15.    However, when LOREDO started stepping down these stairs, a male passenger nudged into her. She was at the top of these stairs when this person nudged into her, and she stumbled forward. Then she fell and rolled to the bottom of the stairs.



16.   As a result, LOREDO sustained severe injuries that include, but are not limited to, a severely injured back, a concussion, possible traumatic brain injuries, and other serious injuries.

17.   At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

a.   The stairsteps Plaintiff fell on were unreasonably narrow; and

b.   The stairsteps Plaintiff fell on were unreasonably angled; and

c.   The stairsteps Plaintiff fell on had unreasonably loose nosings; and

d.   The stairsteps Plaintiff fell on were unreasonably slippery; and

e.   The stairsteps Plaintiff fell on were uneven and not uniform in dimensions (including width, height, depth, angles, and otherwise), which unreasonably hindered Plaintiff's body's ability to step safely down the subject stairsteps; and

f.   The stairsteps Plaintiff fell on lacked adequate visual cues to help passengers see each step (such as yellow or other conspicuous tape/signs/stickers/coloring/other cues); and

g.   The handrail such that it was not able to be grasped in a manner that could have prevented LOREDO's fall, and it was otherwise inadequate to prevent or mitigate Plaintiff's incident; and

h.   The fact that Defendant did not have crew members and/or reasonably trained crewmembers adequately supervising the subject area at the time; and

i.   The unreasonable overcrowding on the subject stairs, as there were approximately 20 or more persons trying to use the subject stairs at the same time, far too many passengers for stairs of this size.  CARNIVAL failed to have crewmembers stationed in the subject area to control the crowd and/or any crewmembers it did station failed to adequately control this crowd and allow for a safe number of passengers to descend

the stairs during appropriate intervals of time; and

j.   Other dangerous conditions that will be revealed through discovery.

18.   Each of these dangerous conditions alone was sufficient to and did cause LOREDO'S incident and injuries, and LOREDO is alleging that CARNIVAL was negligent as to each of these conditions alternatively.

19.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a.   There was a sign on the subject steps that said "**watch your step**, but a reasonable person would not have been able to see this sign while stepping down the steps from the top.

b.   CARNIVAL participated in the installation and/or design of the subject area, or alternatively, CARNIVAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject stairs, such that CARNIVAL should have known of the design defects of the subject stairs and area before providing them for public use. These design defects include, but are not limited to, the dangers outlined in **paragraph 17(a-g, j)** of this complaint.

c.   Both prior to and after the subject incident, CARNIVAL installed and/or refitted similar stairs on other ships in CARNIVAL'S fleet to make them less dangerous.

d.   There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in **paragraph 17(a-g, j)** of this Complaint,   and   CARNIVAL   should   have   known   of   these

standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

e. CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in LOREDO'S incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject area prior to LOREDO's incident.

f. Previous passengers suffered prior slip and fall incidents while descending the same or similar stairs on ships in CARNIVAL'S fleet (Carnival Cruise Line, Princess Cruises, Holland America Line, Seabourn, P&O Cruises, Costa Cruises, AIDA Cruises, and Cunard), including, but not limited to, the Plaintiff in *Williford v. Carnival Corp.*, No. 17-21992-CIV, 2019 WL 6250824, at *3–4 (S.D. Fla. Nov. 22, 2019) (collecting other prior incidents involving stairs on the Carnival *Dream*, *Magic*, and their other ships), *Hawks v. Carnival Corporation*, Case 1:18-cv-23210-MGC, *Donaldson v. Carnival Corporation*, Case 1:20-cv-23258-RNS; and *Parrish v. Carnival*, Case 1:16-cv-22070-FAM, *Torrents v. Carnival Corp.*, No. 19-24760-CIV, 2022 WL 3154511, at *5 (S.D. Fla. Aug. 8, 2022), *Peare v. Carnival Corp.*, No. 19-25285-CIV, 2022 WL 426575, at *2 (S.D. Fla. Feb. 11, 2022), *Britt v. Carnival Corp.*, 580 F. Supp. 3d 1211, 1212 (S.D. Fla. 2021), *Sterling v. Carnival Corp. & PLC*, No. 1:21-CV-20198-KMM, 2021 WL 5997001, at *4 (S.D. Fla. Dec. 18, 2021), *Morgan v. Carnival Corp.*, No. 1:20-CV-23857, 2021 WL 3129634, at *1 (S.D. Fla. July 23,

2021), *Johnson v. Carnival Corp.*, No. 19-CV-23167, 2021 WL 1379209, at *5 (S.D. Fla. Apr. 12, 2021), *Middleton v. Carnival Corp.*, No. 17-23158-CIV, 2019 WL 656412, at *2 (S.D. Fla. Jan. 14, 2019), report and recommendation adopted, No. 17-23158-CIV, 2019 WL 2254702 (S.D. Fla. Feb. 25, 2019), *Amy v. Carnival Corp.*, 360 F. Supp. 3d 1345, 1355 (S.D. Fla. 2018), rev'd and remanded, 961 F.3d 1303 (11th Cir. 2020), *Peck v. Carnival Corp.*, No. 16-20214-CIV, 2017 WL 7726728, at *7 (S.D. Fla. July 13, 2017), *Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2015 WL 5006071, at *2 (S.D. Fla. Aug. 23, 2015).

g.  Moreover, Defendant knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

20.  At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

21.  The subject area and the vicinity lacked adequate safety features to prevent or minimize LOREDO'S incident and/or injuries.

22.  These hazardous conditions were known, or should have been known, to CARNIVAL in the exercise of reasonable care.

23.  These hazardous conditions existed for a period of time before the incident.

24.  These conditions were neither open nor obvious to LOREDO.

25.  At all times relevant, CARNIVAL failed to adequately inspect the subject area and the vicinity for dangers, and CARNIVAL failed to adequately warn LOREDO of the dangers.

26.  At all times relevant, CARNIVAL had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

27.    At all times relevant, CARNIVAL failed to maintain the subject area and the vicinity in a reasonably safe condition. For example, CARNIVAL failed to perform regular upkeep on the subject stairs, including, but not limited to, tightening and/or reducing the slip resistance of the nosing of the stairs. This failure to maintain is only an example, and CARNIVAL failed to maintain the subject area and the vicinity in other ways as well.

28.    At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area and the vicinity involved in LOREDO'S incident.

29.    At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in LOREDO'S incident.

30.    The crewmembers of the *Ecstasy* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

31.    CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

32.    CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

33.    The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

34.    The crewmembers were represented to LOREDO and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves

as such. LOREDO detrimentally relied on these representations as LOREDO would not have proceeded on the subject cruise had LOREDO believed the crewmembers were not employees of CARNIVAL.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

35.   LOREDO hereby adopts and re-alleges each and every allegation in paragraphs 1-26 and 30-34, as if set forth herein.

36.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

37.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

38.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to LOREDO and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed **paragraph 17** of the instant Complaint were present at the time of LOREDO'S incident.

39.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

40.   These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

41.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

42.   CARNIVAL'S negligence proximately caused LOREDO great bodily harm in that, but for CARNIVAL'S negligence, LOREDO'S injuries would not have occurred.

43.   As a result of CARNIVAL'S negligence, LOREDO has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of LOREDO'S vacation, cruise, and transportation costs.

44.   The losses are permanent and/or continuing in nature.

45.   LOREDO suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, SARAH LOREDO, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that LOREDO will suffer and incur in the future, as a result of LOREDO's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of LOREDO'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT II**
**<u>NEGLIGENT FAILURE TO MAINTAIN</u>**

**ARONFELD TRIAL LAWYERS**
Aronfeld.com
**Page 10 of 21**

46.    LOREDO hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26-27, and 30-34, as if set forth herein.

47.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

48.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

49.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to LOREDO and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed **paragraph 17(a-g, j)** of the instant Complaint were present at the time of LOREDO'S incident.

50.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant complaint.

51.    Moreover, these risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately maintain the subject area and the vicinity.

52.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

53.    CARNIVAL'S negligence proximately caused LOREDO great bodily harm in that, but for CARNIVAL'S negligence, LOREDO's injuries would not have occurred.

54.     As a result of CARNIVAL'S negligence, LOREDO has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of LOREDO'S vacation, cruise, and transportation costs.

55.     The losses are permanent and/or continuing in nature.

56.     LOREDO has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, SARAH LOREDO, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that LOREDO will suffer and incur in the future, as a result of LOREDO's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of LOREDO'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT III
### NEGLIGENT FAILURE TO REMEDY

57.     LOREDO hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26, and 30-34, as if set forth herein.

58.     CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

59.     This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

60.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to LOREDO and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in **paragraph 17** of the instant Complaint were present at the time of LOREDO'S incident.

61.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

62.   Moreover, these risk-creating and/or dangerous conditions were caused CARNIVAL'S failure to adequately remedy the subject area.

63.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

64.   CARNIVAL'S negligence proximately caused LOREDO great bodily harm in that, but for CARNIVAL'S negligence, LOREDO's injuries would not have occurred.

65.   As a result of CARNIVAL'S negligence, LOREDO has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of LOREDO'S vacation, cruise, and transportation costs.

66.   The losses are permanent and/or continuing in nature.

67. LOREDO has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, SARAH LOREDO, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that LOREDO will suffer and incur in the future, as a result of LOREDO's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of LOREDO'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

68. LOREDO hereby adopts and re-alleges each and every allegation in paragraphs 1-24 and 30-34, as if set forth herein.

69. At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including LOREDO.

70. Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to LOREDO.

71. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

72. At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to LOREDO and was negligent by

failing to warn LOREDO of the dangerous conditions discussed in **paragraph 17(a-e, g-j)** of the instant Complaint.

73.    Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

74.    These dangerous conditions were also created by CARNIVAL.

75.    CARNIVAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or CARNIVAL failed to warn LOREDO despite knowing of the dangers.

76.    These dangerous conditions existed for a period of time before the incident.

77.    These conditions were neither open nor obvious to LOREDO.

78.    CARNIVAL'S breach was the cause in-fact of LOREDO'S great bodily harm in that, but for CARNIVAL'S breach LOREDO's injuries would not have occurred.

79.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

80.    CARNIVAL'S breach proximately caused LOREDO great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

81.    As a result of CARNIVAL'S negligence, LOREDO has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of LOREDO'S vacation, cruise, and transportation costs.

82.   The losses are permanent and/or continuing in nature.

83.   LOREDO has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, SARAH LOREDO, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that LOREDO will suffer and incur in the future, as a result of LOREDO's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of LOREDO'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY**

84.   LOREDO hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26, and 28-34, as if set forth herein.

85.   At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to LOREDO, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in **paragraph 17(a-g, j)** in the instant Complaint, as well as to design and install reasonable safeguards.

86.   At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which LOREDO was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

**ARONFELD TRIAL LAWYERS**
Aronfeld.com
**Page 16 of 21**

87.     At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the *Ecstasy*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to LOREDO, to design, install and/or approve of the subject area and the vicinity without any defects.

88.     At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject area and the vicinity involved in LOREDO'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

89.     CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

90.     CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Ecstasy*, during the new build process.

91.     CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

92.     CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

93.     However, CARNIVAL permitted the dangerous conditions discussed in **paragraph 17(a-g, j)** of the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

94.     Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

95.     The design flaws that made the subject area and the vicinity involved in LOREDO'S incident unreasonably dangerous were the direct and proximate cause of LOREDO'S injuries.

96.     CARNIVAL is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in LOREDO'S incident, which it knew or should have known of.

97.     CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

98.     CARNIVAL'S breach was the cause in-fact of LOREDO'S great bodily harm in that, but for CARNIVAL'S breach LOREDO's injuries would not have occurred.

99.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

100.    CARNIVAL'S breach proximately caused LOREDO great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

101.    As a result of CARNIVAL'S negligence, LOREDO has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of LOREDO'S vacation, cruise, and transportation costs.

102.    The losses are permanent and/or continuing in nature.

103.    LOREDO has suffered these losses in the past and will continue to suffer such loses

in the future.

**WHEREFORE**, Plaintiff, SARAH LOREDO, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that LOREDO will suffer and incur in the future, as a result of LOREDO's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of LOREDO'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VI
### NEGLIGENCE FOR THE ACTS OF CARNIVAL'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY

104.  LOREDO hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26, and 30-34, as if set forth herein.

105.  CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

106.  The crewmember responsible for controlling the crowd in the subject area was an agent of CARNIVAL for the following reasons:

a.      They were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

b.      These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

c.      These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.     CARNIVAL acknowledged that these staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

107.  CARNIVAL is vicariously liable for the acts of its staff, employee, and/or agent who was responsible for controlling the crowd in the subject area.

108.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

109.  This negligence proximately caused LOREDO great bodily harm in that, but for this negligence, LOREDO'S injuries would not have occurred.

110.  As a result of CARNIVAL'S negligence, LOREDO has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of LOREDO'S vacation, cruise, and transportation costs.

111.  The losses are permanent and/or continuing in nature.

112.  LOREDO has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, SARAH LOREDO, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that LOREDO will suffer and incur in the future, as a result of LOREDO's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of

LOREDO'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, SARAH LOREDO, demands trial by jury on all issues so triable.

**Dated:** November 14, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for LOREDO***